## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| PAN AM SYSTEMS, INC. *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Docket No. 2:11-cv-00339-NT |
| | ) | |
| CHALMERS HARDENBERGH, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON DEFENDANTS' MOTION TO DISMISS

### INTRODUCTION

Defendants move to dismiss Plaintiffs' Complaint for failure to state claims on which relief can be granted. For the reasons set forth below, Defendants' Motion is GRANTED. The Plaintiffs' claims are DISMISSED without prejudice. Plaintiffs are given leave to file an Amended Complaint within thirty (30) days from the date of this order.

### FACTS ALLEGED IN THE COMPLAINT

The Plaintiffs are Pan Am Systems, Inc. ("**Pan Am**"), its subsidiary, Springfield Terminal Railway Company ("**Springfield Terminal**"), and David Andrew Fink. Mr. Fink was the President and Chief Executive Officer of Pan Am from approximately 2000 to March of 2011.

Defendant Atlantic Northeast Rails & Ports, Inc. ("**ANRP**") is a "widely read weekly trade newsletter and e-bulletin covering the Northeastern United States, Eastern Quebec and the Canadian Maritimes regions," which also maintains a

website containing back issues of its newsletters. Complaint at ¶¶ 4-5. Defendant Chalmers Hardenbergh is the editor, publisher, owner, and principal of ANRP. Defendant C.M. Hardenbergh, P.A., is a Maine corporation which is an owner and principal of ANRP.

The Complaint alleges that the Defendants published the following statements about the Plaintiffs in ANRP's trade newsletter, e-bulletins, and on ANRP's website between December 2, 2009 and March 17, 2011.

On December 2, 2009, ANRP Issue 09#11B "ST: COAL DERAILMENT" stated:

> Peter Burling, chair of the New Hampshire Rail Transit Authority, blamed ST for the accident. "What has happened here is a perfectly predictable accident – but it's hard to describe it as an accident, since the probabilities were so clear it was going to take place. The only thing we didn't know is when and where . . . . A horrendously dilapidated railroad system has caused a slow-moving coal train to fall off the tracks."

Complaint at ¶ 12A.[1]

ANRP's October 12, 2010 E-Bulletin and October 22, 2010 Issue 10#10A, "PAN AM AT NEARS" and "PATRIOT CORRIDOR CONGESTION," stated:

> In addition to the complaints from Maine and New Hampshire [See 10#09B] about how long cars are taking to move from Mechanicville to Ayer, one other prominent customer at NEARS was dissatisfied with Pan Am service. She's been familiar with it for many years and would say only this: "It's been consistent. Consistently bad."

Id. at ¶12B (brackets in Complaint).

ANRP's November 2, 2010 E-bulletin and November 8, 2010 Issue 10#10B, "ST: HOME-GROWN APUs" and "A wise use of company resources?" stated:

---

[1] To avoid confusion, the Court will refer to the subparagraphs of Paragraph 12 alphabetically.

2

> Terry Judge, sales and marketing director plus communications manager for Kim Hostart, which manufactures many of the APUs used in North American locomotives, was bemused by the Pan Am move. "I would think they have plenty of other challenges, [such as] safety challenges, employee relations and locomotive maintenance.

*Id.* at ¶12C (brackets in Complaint).

ANRP's December 10, 2010 E-Bulletin and December 21, 2010 Issue 10#12A,

"Better interchange would mean more customers" stated:

> Despite ST's promise to locate a crew in Concord and switch customers five days a week [see 10#05A], Dearness reported that ST has done neither. . . . If ST would provide the service it promised, Dearness believes he could land two more customers. One is "very frustrated because it would like to start now, and can't due to the level of service and is familiar" with ST's lack of service.

*Id.* at ¶12D (brackets in Complaint).

ANRP's March 10, 2011 E-Bulletin and March 21, 2011 Issue 11#02B "PAN

AM: A NEW DAWN?" stated:

> PAN AM OWNER TIM MELLON REMOVED DAVE FINK PERE from management of the company according to four separate sources: one MBTA, one union, one Maine source, and one form [sic] other railroad management in New England. Sources differ on what precipitated the action, whether Fink is formally removed or is only on a "leave of absence," and whether Mellon came to new England to administer the coup de grace or did it by telephone, but all agree that David Andrew Fink, the head of Pan Am Systems, is no longer in charge.

*Id.* at ¶12E.

ANRP's March 17, 2011 E-Bulletin and March 21, 2011 Issue #02B "PAN

AM: HAZ-MAT SERVICE" stated:

> The railroad "loses" cars on a consistent ongoing basis, including one car "lost" for over 60 days….even though certain DHS and DOT statutes require carriers to release [TIH] cars within 48 hours.

3

*Id.* at ¶ 12F (brackets in Complaint).

The Plaintiffs have brought a four count Complaint against the Defendants alleging defamation, defamation *per se*, false light, and punitive damages. The Defendants have moved to dismiss each count of the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state claims upon which relief may be granted. In their Response, the Plaintiffs claim that they have alleged sufficient facts to state claims for defamation and false light. They further explain that they have plead defamation *per se* and punitive damages not as separate causes of action but rather to put the Defendants on notice that they are pursuing a defamation *per se* theory and seek punitive damages.

## LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). The First Circuit has set forth, consistent with *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), the "proper way of handling a motion to dismiss" for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6):

> Step one: isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements. Step two: take the complaint's well-pled (*i.e.* non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief.

*Schatz v. Republican State Leadership Comm.*, No. 11-1437, 2012 WL 414264, at *4 (1st Cir. Feb. 10, 2012) (citations omitted). "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific' job that requires the reviewing court to 'draw on' our 'judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950). "Although there is no need for detailed factual allegations, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face; accordingly, a complaint must include more than a rote recital of the elements of a cause of action, but instead must include factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Artuso v. Vertex Pharma, Inc.,* 637 F.3d 1, 5 (1st Cir. 2011).

## ANALYSIS

### I.   DEFAMATION

The elements of a defamation action under Maine common law, are:

> (1) a false and defamatory statement pertaining to the plaintiff;
> (2) an unprivileged publication to a third party;
> (3) fault amounting at least to negligence; and
> (4) defamation per se or special harm.

*Garrett v. Tandy Corp.,* 295 F.3d 94, 103 (1st Cir. 2002) (citing *Rippett v. Bemis*, 672 A.2d 82, 86 (Me. 1996)); *Morgan v. Kooistra*, 941 A.2d 447, 455 (Me. 2008).

Over the last fifty years, the Supreme Court has imposed various constitutional restrictions on common law defamation actions. The Court, concerned about the chilling effect of defamation actions on free speech, has sought to ensure robust public debate on areas of public concern. In cases brought by public officials

or public figures, for instance, plaintiffs are required to prove that the allegedly defamatory statements were made with "actual malice," that is, with knowledge that the statements were false or with reckless disregard of the statements' falsity. *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-83, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964) (public officials); *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 154-55, 87 S. Ct. 1975, 18 L. Ed. 2d 1094 (1967) (public figures).

Private individuals claiming to be defamed by statements relating to matters of public interest or concern are required to make some showing of fault and are not permitted to recover presumed or punitive damages unless actual malice is shown. *Gertz v. Robert Welch, Inc.* 418 U.S. 323, 349-50, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974). In defamation actions against a media defendant on matters of public concern, the Court has rejected the common law presumption of falsity and instead imposed the burden of showing the falsity of the statements on the plaintiffs. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776-77, 106 S. Ct. 1558, 89 L. Ed. 2d 783 (1986). The Supreme Court has also imposed constitutional limits on the type of speech which is actionable, carving out exceptions for statements which are not provable as false such as rhetorical hyperbole, imaginative expression, and parody. *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 16-21, 110 S. Ct. 2695, 111 L. Ed. 2d 1 (1990) (citing cases). *See also Veilleux v. Nat'l Broad. Co.,* 206 F.3d 92, 107 (1st Cir. 2000).

### A. Media Defendant, Matter of Public Concern, Public Official or Figures

In order to ascertain which elements must be borne by the Plaintiffs, it is necessary to decide whether: (1) the Plaintiffs are public officials or public figures; (2) the defendants are members of the media; and (3) the speech involves a matter of public concern.

#### 1. *Media Defendant*

Starting with the easiest of these questions, the Complaint alleges that ANRP is a "widely read weekly trade newsletter and e-bulletin covering the Northeastern United States, Eastern Quebec and the Canadian Maritimes regions" and Chalmers Hardenbergh and C.M. Hardenbergh, P.A. are the owners and principals of ANRP. As such, Defendants should be treated as "media defendants."

#### 2. *Matter of Public Concern*

We can also tell from the Complaint that the speech at issue in this case involves matters of public concern. Matters of public concern are those that can be "fairly considered as relating to any matter of political, social, or other concern to the community." *Connick v.* Myers, 461 U.S. 138, 146-47, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983). Matters of private concern are those that address "matters only of personal interest." *Id.* Courts determine whether a statement pertains to a public concern by assessing its "content, form and context." *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 761, 105 S. Ct. 2939, 86 L. Ed. 2d 593 (1985).

In determining whether a statement impacts a matter of public concern, "the relevant community need not be very large and the relevant concern need not be of paramount importance or national scope. Rather, 'it is sufficient that the speech concern matters in which even a relatively small segment of the general public might be interested.'" *Levinsky's, Inc. v. Wal-Mart Stores, Inc.,* 127 F.3d 122, 132 (1st Cir. 1997) (quoting *Roe v. City of San Francisco,* 109 F.3d 578, 585 (9th Cir. 1997)). In *Levinsky's,* a manager at Wal-Mart told a journalist that a retail competitor (Levinsky's) took a long time to answer their phones. The district court, analyzing whether this defamatory statement addressed a matter of public concern stated:

> This speech, however, can be reasonably understood as addressing a matter of general public concern in the context of the competition between these two retailers for customers. The statement regarding Levinsky's telephone response habits speaks directly to customer service: a consideration of primary importance to consumers in a competitive marketplace.

*Levinsky's, Inc. v. Wal-Mart Stores, Inc.,* 999 F. Supp. 137, 142 (D. Me. 1998).

As for "content," the statements involve the condition of the Plaintiffs' railways, the service provided by the Plaintiffs to their freight customers, and the operations of the Plaintiffs' railroads. As for the "form" of the statements, the Complaint reveals that they were part of articles critical of the Plaintiffs that were published between December 2009 and March 2011 in the Defendants' trade newsletter and e-bulletin. The Complaint, which includes only snippets from the Defendant's articles, reveals little about the "context" of the statements. What the Court can determine from the excerpts provided, however, is that the articles are

critical of the Plaintiffs' railroad operations on important issues such as safety and service.

Railroads are a highly regulated industry, subject to public laws on safety, 49 U.S.C. §§ 20101 - 21311, provided with special public funding, 49 U.S.C. §§ 22101 – 22706, and subject to oversight by the Federal Railroad Administration, 49 U.S.C. § 103, and the Surface Transportation Board, ICC Termination Act of 1995, 49 U.S.C. §§ 701 - 727. Over a hundred years ago, in a case deciding the power of the courts to compel two railroad companies to connect their lines, the Supreme Court underscored the public interest in the operation of railroads.

> Railroads have from the very outset been regarded as public highways, and the right and the duty of the government to regulate in a reasonable and proper manner the conduct and business of railroad corporations have been founded upon that fact. Constituting public highways of a most important character, the function of proper regulation by the government springs from the fact that in relation to all highways the duty of regulation is governmental in its nature. . . . It is because they are such highways that the land upon which the rails are laid, and also that which may be necessary for the other purposes of the corporation, is said to be used for a public purpose, and on that ground the power of eminent domain which is given them is held to be a constitutional exercise of legislative authority. The right of the legislature to tax in furtherance of such use is founded upon the same considerations that the use is a public one, and therefore taxation in support of such a use is valid. The companies hold a public franchise, and governmental supervision is valid. They are organized for the public interests and to subserve primarily the public good and convenience.

*Wisconsin, M. & P.R. Co. v. Jacobson,* 179 U.S. 287, 297, 21 S. Ct. 115 (1900).

Assessed against this backdrop, the public interest in the safety, efficiency, and viability of the rail system – whether freight or passenger – is clear. See,

*Guilford Trans. Indus. v. Wilner*, 760 A.2d 580, 597 (D.C. Cir. 2000) (comments made by media defendant about railroad operator and its troubled history with labor unions and litigation with Amtrak over maintenance of track were of substantial public concern).[2] Judged by their content, form and context, the allegedly defamatory statements concern matters of public interest.

### 3. *Public Figures*

Plaintiffs are public figures if they either assume "'roles of especial prominence in the affairs of society,' perhaps by occupying positions of 'persuasive power and influence,' or . . . 'thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved.'" *Pendleton v. Haverhill*, 156 F.3d 57, 67 (1st Cir. 1998) (quoting *Gertz*, 418 U.S. at 345). Plaintiffs who fall into the second category are considered public figures only for that particular controversy or limited-purpose public figures. *Gertz*, 418 U.S. at 351. To assess whether the Plaintiffs are limited-purpose public figures, the Court must first determine if a public controversy existed prior to the alleged defamatory publications. *Norris v. Bangor Publ'g Co.*, 53 F. Supp. 2d 495 (D. Me. 1999).

---

[2]      The Plaintiffs cite *Snead v. Redland Aggregates, Ltd.*, 998 F.2d 1325 (5th Cir. 1993), to support their claim that they are private parties in a matter involving private concerns. In *Snead*, the inventor of a "dump" mechanism for trains sued two English companies (Redland and Standard) for misappropriation of trade secrets and breach of a confidential relationship. Redland was a company which quarried sand, gravel, and crushed stone. Standard was a manufacturer of trains. After the suit was filed, Snead issued a press release accusing Redland and Standard of "international theft," "international espionage," and "international piracy." The defendants counterclaimed for libel. The Fifth Circuit held that Standard and Redland were private parties and the speech at issue was not a matter of public concern. *Snead* is factually distinguishable from this case in that there was no media defendant, and the unsolicited press release was solely in the interest of Snead. Furthermore, the Fifth Circuit used a different standard to assess matters of public concern, focusing on whether the statements were of interest to the general public rather than to a particular industry. In contrast, the First Circuit has instructed that the relevant interested community "need not be very large and the relevant concern need not be of paramount importance or national scope." *Levinsky's*, 127 F.3d at 132.

If Plaintiffs are private citizens, they need only allege that the Defendants negligently disregarded the falsity of the statements. If, however, Plaintiffs are public figures, then they are required to allege actual malice, that is, that the Defendants acted knowingly or with reckless disregard of the falsity of the statements. In *Guilford*, similar litigation which apparently involves one of the same plaintiffs (Mr. Fink), the court expressed the view that the railroad company plaintiffs and Mr. Fink were public figures. *Guilford*, 760 A.2d at 588 n.5.

The Complaint does not provide sufficient facts to support a conclusion that the Plaintiffs are public figures. The Plaintiffs argue that they are not public figures. The Defendants have asked the Court to take judicial notice of several local newspaper articles that mention Pan Am, Springfield Terminal, and Mr. Fink, in support of Defendants' claim that Pan Am, Springfield Terminal, and Mr. Fink are public figures. The Court declines to take judicial notice of these newspaper articles and sidesteps the question of whether the Plaintiffs are public figures for the purposes of the Motion to Dismiss. Accordingly, the Complaint, at least at this stage of the proceedings, need only allege fault on the part of the Defendants to the negligence standard.

### B. Elements of Defamation

In their Motion to Dismiss, the Defendants argue that the Plaintiffs have failed to allege facts sufficient to support each of the elements of defamation. The Defendants argue that one of the statements is privileged under the common law fair report privilege. The Defendants contend that the statements alleged in the

Complaint do not bear a defamatory meaning and, even if they do, are statements of opinion that are not provably false. The Defendants also argue that the Plaintiffs have not sufficiently alleged falsity or fault — under either an actual malice or negligence standard.

### 1. Unprivileged Publication

The Defendants argue that the Court should find that the publication of the statement made by Peter Burling, the Chair of the New Hampshire Rail Transit Authority, is protected by the fair report privilege. In states that have recognized the fair report privilege, publishers who "fairly and accurately report certain types of official or governmental action' are immune from lawsuits arising out of such reports. *Yohe v. Nugent*, 321 F.3d 35, 42 (1st Cir. 2003) (applying Massachusetts fair report privilege). The Defendants ask the Court to apply this privilege even though it has not yet been recognized in Maine. The Court declines the invitation. *Katz v. Pershing, LLC,* 672 F.3d 64, 74 (1st Cir. 2012) ("After all, federal diversity courts are charged with ascertaining state law, not with reshaping it.").

### 2. Defamatory

In order to be actionable, a statement must be defamatory. A communication is defamatory if it "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Bakal v. Weare*, 583 A.2d 1028, 1029 (Me. 1990) (quoting Restatement (Second) of Torts § 617 (1977)). *See also Veilleux,* 206 F.3d at 107-08. Whether a false statement can be found defamatory is a question of law. *Morgan*, 941 A.2d at

455. The Court must construe allegedly defamatory statements in "the light of what might reasonably have been understood therefrom by the persons who read it." *Chapman v. Gannett*, 171 A. 397, 398 (Me. 1934) (quoting Cooley on Torts (4th Ed.) 503, § 146).

The Defendants argue that many of the statements alleged by the Plaintiffs are statements of opinion, not fact. Because "expressions of opinion may often imply an assertion of objective fact," the Supreme Court has declined to create a "wholesale defamation exemption for anything that might be labeled 'opinion.'" *Milkovich*, 497 U.S. at 18. However, "a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection." *Id.*

"The crucial difference between statements of fact and opinion depends upon whether ordinary persons hearing or reading the matter complained of would be likely to understand it as an expression of the speaker's or writer's opinion, or as a statement of existing fact." *Caron v. Bangor Publ'g Co.*, 470 A.2d 782, 785 (Me. 1984) (quoting *Mashburn v. Collins*, 355 So.2d 879, 885 (La. 1977)). The Court must "look to the totality of the circumstances and to whether the statement was intended to state an objective fact or a personal observation." *Ballard v. Wagner*, 877 A.2d 1083, 1087-88 (Me. 2005) (citing *Lester v. Powers*, 596 A.2d 65, 71 (Me. 1991)); *True v. Ladner*, 513 A.2d 257 (Me. 1986) (superintendent's statements that former math teacher was not good and could not turn the students on were actionable because they implied undisclosed defamatory facts.)

Without having the articles from which these statements were taken, it is difficult to determine whether the statements were likely to be understood as an expression of the writer's opinion or a statement of existing fact. Several of the statements could be construed either way. At this motion to dismiss stage, drawing all inferences in the Plaintiffs' favor, the Court finds, with one exception, that the statements are capable of a defamatory meaning.

There is one statement which on its face is not defamatory under Maine law.

> PAN AM: A NEW DAWN? PAN AM OWNER TIM MELLON REMOVED DAVE FINK PERE from management of the company according to four separate sources: one MBTA, one union, one Maine source, and one form [sic] other railroad management in New England.[3] Sources differ on what precipitated the action, whether Fink is formally removed or is only on a 'leave of absence,' and whether Mellon came to New England to administer the coup de grace[4] or did it by telephone, but all agree that David Andrew Fink, the head of Pan Am Systems, is no longer in charge.

Complaint at ¶ 12E. Maine law provides that a statement that an individual is fired, without providing defamatory reasons for the firing, is not defamatory. "An employee may be discharged for any one of a multitude of reasons unrelated to his honesty, integrity or occupational skill, or indeed for no reason at all. . . . [I]t is the reason for discharge rather than the discharge alone which can render the statement slanderous per se." *Picard v. Brennan*, 307 A.2d 833, 835 (Me. 1973). Since the statement provides no reason for Mr. Fink's removal from Pan Am, it does not bear a defamatory meaning under Maine law.

---

[3]      "The publication of false and defamatory statements even if attributed to others can still form the basis for a claim of defamation." *Jamison v. OHI*, No. Civ.A. CV-03-569, 2005 WL 3678040, (Me. Super. Ct. Nov. 28, 2005).

[4]      One can infer from this quote that Mr. Fink's removal was not his choice. The hyperbolic term "coup de grace" carries with it a sense that Mr. Fink was fired, but it says nothing about why he was discharged.

14

### 3. False

In order to be actionable, a statement must be provable as false. *Levesque v. Doocy*, 560 F.3d 82, 88 (1st Cir. 2009). Because this case involves a media defendant making statements of public concern, the Plaintiffs bear the burden of showing the falsity of the statements. *Philadelphia Newspapers, Inc.*, 475 U.S. at 776.

Construing all inferences in the Plaintiffs' favor, as the Court is bound to do on a motion to dismiss, the Court agrees with the Defendants that the Complaint is deficient in its allegations of falsity. Although the Complaint alleges that the statements contained in Paragraph 12 are "false," it provides absolutely no factual underpinning to support that claim. A "complaint must include more than a rote recital of the elements of a cause of action, but instead must include factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Artuso,* 637 F.3d at 5.

The Plaintiffs are in a position to know whether and how the statements are false. For example, the quote from Peter Burling could be false in a number of ways. Peter Burling may have never spoken the words attributed to him. It could also be that no derailment of a coal train ever occurred. Or perhaps a train did derail but not because the railways were dilapidated. The Plaintiffs must, especially under the *Iqbal/Twombley* standard, provide factual underpinning of how the statements are false.

### 4. **Fault**

The fault that a defamation plaintiff must allege depends on whether the plaintiff is a public official, public figure, or private person. Because the Court is unable, at this stage of the proceedings, to determine whether the Plaintiffs are public figures who must show actual malice, the Court will assess whether the Complaint has sufficiently alleged that the Defendants negligently disregarded the falsity of the statements.

To show that the Defendants were at fault in their publication of the statements, the Plaintiffs point only to their bald allegation that the statements set forth in the Complaint were false.[5] The Plaintiffs argue that fault "is reasonably implied by their publication of false defamatory statements to third persons." Plaintiffs' Response to Motion to Dismiss at 10. Particularly where, as here, the Defendants have not offered the factual underpinning necessary for the inference that the statements were false in the first place, their allegations that the Defendants acted negligently fall short. Rote recitation of the elements does not allow the Court to make the inference that the Defendants negligently disregarded the falsity of the statements. *Hakky v. Washington Post Co.,* No. 8:09-cv-2406-T-30MAP, 2010 WL 2573902, at *6 (M.D. Fla. June 24, 2010) (dismissal appropriate

---

[5]     The Plaintiffs allege that Defendants' publication of the statements "amounts to at least negligence," Complaint ¶ 16, and that Defendants "published the aforedescribed false and defamatory statements with knowledge of their falsity, or in reckless disregard of the truth or falsity of such statements," *id.* at ¶ 17. The Plaintiffs repeat these same allegations in Count II. *Id.* at ¶¶ 22-23. In Count III, the Plaintiffs allege that "Defendants had knowledge, or acted in reckless disregard, to the falsity of the aforedescribed publicized matter." *Id.* at ¶ 27. In Count IV, Plaintiffs allege that "Defendants' aforedescribed actions were committed with actual or implied malice towards Plaintiffs." *Id.* at ¶ 30. Each of these statements is a legal conclusion and the Complaint contains no other factual allegations of fault.

where plaintiff does not state how defendants made statements negligently or provide facts supporting malice.) *See also Schatz*, 2012 WL 414264, at *4 (allegations that "offer legal labels and conclusions or merely rehash cause-of-action elements" are to be ignored).

### 5. Defamation *Per Se*

Plaintiffs concede that defamation *per se* is not a separate cause of action, but rather is included to put the Defendants on notice that the suit involves defamation *per se*. Under Maine law, statements are defamatory *per se* if they relate to a persons' profession, occupation, or official station. *Galarneau v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 504 F.3d 189, 198 (1st Cir. 2007); *Saunders v. VanPelt*, 497 A.2d 1121, 1126 (Me. 1985). Defamation *per se* is "relevant to damages, not to liability. Under it, claimants in certain defamation cases need not prove actual damages as a prerequisite to recovery." *Levinsky's*, 127 F.3d at 135.

However, since the statements involve matters of public concern they are protected by the First Amendment, and in order to recover presumed or punitive damages, the Plaintiffs must prove actual malice. *Dun & Bradstreet,* 472 U.S. at 751. As has been discussed, the Complaint is insufficient to state even a claim for negligent defamation, much less actual malice. Once again, the Plaintiffs merely rehash the legal standard, and they have failed to set forth a factual basis sufficient to establish that they are entitled to presumptive damages under the defamation *per se* doctrine.

## II.    FALSE LIGHT

The Restatement (Second) of Torts defines false light as:

One who gives publicity to a matter concerning another that places the other before the public in a false light . . . if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Restatement (Second) of Torts* § 652E. A false light cause of action may lie only when "there is such a major misrepresentation of [the plaintiff's] character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position." *Restatement (Second) of Torts* § 652E cmt. c (1977). *Nelson v. Maine Times,* 373 A.2d 1221 (Me. 1977).

The Plaintiffs concede that a corporation may not bring a false light cause of action and press a false light claim only on behalf of Mr. Fink. The Defendants argue that the Plaintiffs have failed to state a claim for false light because they have not sufficiently alleged that the Defendants acted with malice, or that the statements are highly offensive.

There are only two references — an e-bulletin published on March 10, 2011 and a newsletter published on March 21, 2011 — to Mr. Fink, and both report on his removal from Pan Am management. These statements, as discussed above, reasonably bear the inference that Mr. Fink was fired.

As we have previously stated, under Maine law statements that a person has been discharged are not considered defamatory because "[a]n employee may be discharged for any one of a multitude of reasons unrelated to his honesty, integrity

18

or occupational skill, or indeed for no reason at all." *Picard*, 307 A.2d at 835.[6] Statements which are incapable of a defamatory meaning under Maine law cannot support a false light claim.

In *Veilleux*, the plaintiffs argued that their false light judgment should be sustained even if their defamation judgment were to be reversed. The First Circuit held that "to the extent that we determined that the statements at issue did not disparage plaintiffs, those statements fail to satisfy the requirement under Maine law that the false light in which plaintiffs were placed be 'highly offensive to a reasonable person.'" *Veilleux*, 206 F.3d at 134. The First Circuit noted that "no Maine court has yet grappled with the question of whether a false light claim may proceed where a defamation claim premised on the same statement may not." *Id.* at 135.

The Maine Superior Court, quoting *Veilleux,* has since dismissed a false light claim where the statement did not disparage or defame the plaintiff. *Halco v. Davey*, No. CV-05-037, 2006 WL 6112069 (Me. Super. Ct. June 14, 2006). The Maine Supreme Judicial Court upheld the dismissal. *Halco v. Davey*, 919 A.2d 626, 630-31 (Me. 2007). Because the Plaintiffs' false light claim is based on statements which

---

[6]     The Court notes that the case cited by the Plaintiffs for the proposition that "statements calling into question the professional performance of a doctor could be found to be highly offensive," *Wentworth-Douglass Hosp. v. Young & Novis Prof'l Assoc.*, No. 10-cv-120-SM, 2011 WL 446739 (D.N.H. Feb. 4, 2011), is distinguishable. Questioning a doctor's professional performance, impugns his or her occupational skill and is far more offensive to a reasonable person than stating that someone was removed from a position.

are not defamatory under Maine law, the Plaintiffs' false light claim must be dismissed.[7]

### III.   PUNITIVE DAMAGES

Because the Plaintiffs' underlying causes of action are insufficient to state a claim under Rule 12(b)(6), the Plaintiffs' claim for punitive damages must also be dismissed. *Halco*, 919 A.2d at 631 (because no cause of action except breach of contract survived motion to dismiss, plaintiff's claim for punitive damages was properly dismissed); *Havlik v. Johnson & Wales Univ.*, 509 F.3d 25, 34 (1st Cir. 2007) ("punitive damages are not a separate cause of action but, rather, an element of damages in, and thus wholly derivative of, the plaintiff's defamation claim").

To the extent that Plaintiffs can amend their Complaint to cure its defects, the Court advises that to be eligible for punitive damages, Plaintiffs must allege sufficient factual support for an inference that Defendants acted either with subjective ill will towards the Plaintiffs or in a manner so outrageous that malice towards them can be implied. *Tuttle v. Raymond*, 494 A.2d 1353, 1361 (Me. 1985). "[F]or the purpose of assessing punitive damages, such 'implied' or 'legal' malice will not be established by the defendant's mere reckless disregard of the circumstances." *Id.*

---

[7]      The Plaintiffs' false light claim has additional deficiencies which mirror those contained in Plaintiffs' defamation claim. The complaint does not allege sufficient facts to support an inference either that the statements pertaining to Mr. Fink were false or that the Defendants had knowledge of or acted in reckless disregard as to the falsity of the publicized matter.

## IV.     LEAVE TO FILE AMENDED COMPLAINT

The First Circuit has recently acknowledged that "[t]he precedents on pleading specificity are in a period of transition" and has suggested that district courts allow plaintiffs to amend their complaints and provide plaintiffs an indication of what the district court expects in the amended pleading. *Pruell v. Caritas Christi,* No. 11-1929, 2012 WL 1324455 at *4 (1st Cir. April 18, 2012). Throughout this opinion, the Court has pointed out deficiencies and suggested where it believes additional factual support is required. The Court grants the Plaintiffs 30 days in which to file an amended complaint which addresses the deficiencies.

## CONCLUSION

The Court GRANTS Defendants' Motion to Dismiss with respect to Counts I, III and IV, without prejudice. The Court finds that Count II of the Complaint is not a separate cause of action and that it is subsumed by the ruling on Count I. The Court GRANTS Plaintiffs leave to file an Amended Complaint within thirty (30) days from the date of this order.


SO ORDERED.

/s/ Nancy Torresen
United States District Judge


Dated this 14th day of May, 2012.